All rise. The Illinois County Court of Fifth Division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Morning. I'm sorry, have a seat please. All right, we'll call the next case. People v. Lee Sr. Anthony. All right, will counsels please approach. And state your names for record and the party you're representing. Good morning, Your Honors. Chris Karasik of Jenner and Block on behalf of Appellate Anthony Lee. Good morning, Your Honors. I'm Assistant State's Attorney Nancy Colletti on behalf of the people. Fifteen minutes apiece. Do you want time for a rebuttal? I'd like to reserve two minutes for rebuttal, Your Honors. All right, you may proceed. Good morning, Your Honors. May it please the Court. The Circuit Court erred when it granted the state's motion to dismiss Mr. Lee's ineffective assistance petition for failure to allege prejudice. I plan on addressing the Court's errors in the state's arguments in the following order. First, I will assure that Mr. Lee's petition did substantially allege prejudice under the Strickland test for ineffective assistance. Mr. Lee's trial counsel, Mr. Friedman, failed to interview and present at trial five witnesses who have corroborated the defense and would have impeached the state. And tell me how many of those witnesses would make a difference here. Okay, Your Honor, I can discuss prejudice. So, in this case, the alleged victim L.M.'s testimony at trial was that she was forcibly kidnapped off the street by Mr. Lee and his co-defendant, Mr. Manley. The first affidavits that we have from Mr. Bryan and Gary Massenburg state that they saw the incident occur and they saw her get into the car voluntarily, in contradiction of her trial testimony. Where in their affidavit is the word voluntarily? The word voluntarily, Your Honor, is not expressly used in their affidavits. They said they turned the car around, started talking to a white woman, and then she got into the rear of the car. Yes, Your Honor. She could have been snatched off the street. Well, the affidavits don't describe any snatching, Your Honor. And based on L.M.'s trial testimony, she claimed that she was picked up physically off the ground from behind, physically transported to the backseat of the car. She was kicking and screaming the entire time, and then thrown into the backseat. So here, the affidavits don't describe anything of that sort. They just describe her getting into the car. Oh, it just says she got into the rear of the car. It doesn't say that she wasn't kicking, she wasn't screaming. The affidavit doesn't say any of those things. Right. The affidavit doesn't describe those omissions, Your Honor. But if the affidavits had seen that, they certainly would have described it in their affidavits. Why? Because they base their affidavits on first-hand knowledge, Your Honor. They would describe it in their awareness. Well, people play games with the words of the English language. I mean, if you've got a case where somebody says that they saw somebody who wasn't kicking and screaming, then it would be the job of the lawyer to file an affidavit that says they weren't kicking and screaming. That wasn't done here. Your Honor, here we don't know if lawyers collected these affidavits, but any questions as to whether there actually was kicking and screaming should be answered in an evidentiary hearing based on any sort of details that might have been included. What case says that? People v. Coleman, Your Honor. It doesn't say that. Well, People v. Coleman does say that the well-pleaded allegations must be taken as true at the motion-to-dismiss stage of proceedings. Unless the record shows otherwise. Here's a lady who was beaten. She had a pretty severe beating. These defendants claimed that this was consensual sex, and why did they have to beat her? Why did she have to escape naked? Well, Your Honor, Mr. Lee did not claim that there was consensual sex. He claimed he never had any sex whatsoever. He claimed that he believes Mr. Manley had consensual sex in the backseat of the car. Now, as to the point regarding the beating, Mr. Lee testified that when they went to Merrill Park later in the evening, she put out a cigarette on the floor of his car. He swore at her. She pushed his hand in return, causing him to spill his drink all over himself and also all over his car, at which point he struck her in the face and they engaged in mutual combat. Now, he was contrary to trial and willing to plead guilty to aggravated battery, but that is where the beatings come from, Your Honor. Now, furthermore, with respect to prejudice, we know in Illinois that courts have ordered evidentiary hearings or actually found prejudice where counsel failed to present a witness who would have corroborated the defense or who would have impeached the witness at trial, and that's Peeble v. Stider, Peeble v. Bailey, and Peeble v. Skinner. Here, the trial judge stated explicitly in delivering his verdict that the case came down to credibility, the credibility of Mr. Lee against LM. There were no other witnesses to testify about the alleged crimes, Your Honors, and there was no DNA evidence, no physical evidence of sexual assault, no medical testimony whatsoever. So these five witnesses would have been critically important in impeaching the victim and also in corroborating Mr. Lee's defense. In brief, I want to go over the other two affidavits, three affidavits that we have. Charlene Parker, her affidavit is important because she would have testified and corroborated Mr. Lee's testimony. That after LM got in the car, they drove to a liquor store, and while they were at the liquor store, both Mr. Lee and Mr. Manley entered the liquor store, leaving LM in the car, parked, free to leave by herself. But she didn't choose to leave, Your Honors. And this would have contradicted LM's trial testimony, that when they went to Dad's liquor store, Mr. Lee was the only person who entered the liquor store, and Mr. Manley instead stayed in the parked car with LM the entire time, further confining her and preventing her from leaving, again, further perpetuating the kidnapping that she alleged at trial. Well, with regards to Parker's affidavit, isn't there some conflicting statements with regards to the affidavit and the testimony as well? With regards to Mr. Lee's testimony, Your Honor, no, there isn't. Mr. Lee testified that after LM got in the car voluntarily, they drove to Dad's liquor store, which was about a 30-minute drive, and he entered the liquor store. So she stayed in the parked car because she'd never been to the establishment, or she just didn't want to go inside at that time. And there is a photograph. I believe what you may be referring to, Your Honor, is the Parker affidavit describes a photograph attached to the affidavit. But in the record, there is no photograph. There's no photograph, right? Right, there's no photograph in the record. But Mr. Lee does not rely on the photograph whatsoever. He relies on her statement in the affidavit, the statement that she would have given at trial, that she saw Mr. Lee and Mr. Manley together. Whose affidavit is it? Is it Mr. Lee's or is it hers? It's Charlene Parker's affidavit, Your Honor. Right. So if she's saying that there's a photograph, where's the photograph? The photograph, to the best of my knowledge, Your Honor, has never been in the record. It might have gotten lost at some point. But it's inconsequential because, again, Mr. Lee relies only on her statement that she saw both of them inside the liquor store that night. I think that would suggest... You expect to be able to sell that to somebody that there is no photograph? It got lost somewhere? Your Honor... And this person's going to testify that she took a photograph, but she doesn't know what happened to the photograph? Your Honor, I think either the photograph could have gotten lost or something might have happened when it was attached to the affidavit originally. I can't be sure of that, but... I mean, there's no copy of this photograph anywhere. Not in the record. And a lawyer, as an investigator, gets a photograph. They don't make copies of the photograph, and somewhere it's lost. I mean, wouldn't this be an important piece of evidence if you had such a piece of evidence? I don't think so, Your Honor. You don't think so? No. I think Mr. Lee's relying on the statement that she made in the affidavit, that she saw the men inside the liquor store together, and that statement is sufficient for his purposes to prove that Ellen was in the park car by herself. And as far as any questions about a photograph, those could be answered in an evidentiary hearing when she's called to testify as a witness. So, Phil Ralston's affidavit, he testified that he saw Mr. Lee and the other two at Merrill Park that night, and there was no sexual assault or any sort of violence when he saw them. This would have corroborated Mr. Lee's trial testimony, that after they were at the liquor store, Mr. Lee drove them to Merrill Park, where Mr. Lee sat outside his car drinking beer on a parking stump, while Mr. Manley, again, and Ellen were in the dressing room. Did these observations take place or occur after the so-called incident took place? Did Mr. Elsa's observations? Right. It's hard to tell based on the timing of the record, Your Honor. Ellen did not testify to even going to Merrill Park at trial, so it's hard to tell based on what her testimony was. But Mr. Ralston testified that he indeed saw them at the park. So how does Ralston's affidavit help? Because he testified that he, in fact, saw them at Merrill Park. Mr. Lee did testify to going to Merrill Park, and Ellen never even testified to going there. She said that after the liquor store, they took her to a crack house in a secluded location, where they beat her and raped her at gunpoint. So she did not even testify to going to the park. So Mr. Elsa's affidavit would have corroborated Mr. Lee's testimony. Lastly, Gail Pinkston, based on her affidavit, would have testified that Mr. Manley called her after the incident and told her that Mr. Manley had sex with LLM, but Mr. Lee was nowhere around when it happened. Again, this would have corroborated Mr. Lee's testimony that Mr. Manley and LLM engaged in apparently consensual sex at Merrill Park, but Mr. Lee was not in the car when it happened. Now, we know that at the motion-to-dismiss stage, the circuit court is required to accept all of our pleaded facts as true and to construe our allegations liberally in Mr. Lee's favor, and that's from Pieper v. Coleman. He's not required to prove his claims at this stage. Mr. Lee needs to make a substantial showing so that he can further explore it at an evidentiary hearing. Therefore, at this stage, Mr. Lee... As long as it's not contradictory to what the record shows. This record shows that this lady was a beaten lady. Your Honor, you're correct. Her testimony is that she was raped by both of them, and that she escaped naked, bruised, beaten. I mean, she wasn't just hit one little time. She was beaten. That's what the photographs show, don't they? Your Honor, you're correct. If the record positively rebuts the well-pleaded allegations, then they don't need to be accepted as true. But the allegations here are not positively rebutted by the record. And furthermore, with respect to the photographs taken of the women, those aren't in the record, Your Honor. And any determination as to whether those photographs happened during a sexual assault or whether those photographs happened during the beating of the mutual combat that Mr. Lee and I am engaged in would be a question of fact needed to be determined by a trier of fact. Well, didn't the trier of fact already decide this case? It did, but it didn't have the affidavits and the witness testimonies that we have now. Well, didn't the lawyer decide that he didn't need those? That was his trial strategy? I don't think so, Your Honor. I think based on the record that we have, and I'll get to this in a little bit, I think... Do you have an affidavit from the lawyer why he didn't use these people? No. We haven't been able to reach the lawyer, Your Honor. Why? Is he dead? I don't think so, but I think that in this case, the only way to get him to provide fulsome and truthful testimony is to have an evidentiary hearing at which he can be questioned in open court. So, again, I just want to go through a couple of the examples of errors that the circuit court made, and the state supports some of these errors and argues that they should be made. Here, the circuit court discredited the Massenburg affidavits because they don't identify the parties by their names, but the substance of the affidavits, Your Honors, clearly indicates that the Massenburgs were witnessing the incident at issue. They described a blue Cadillac driving on State Street in Calumet City pulling a U-turn to talk to a white woman. These are substantially the same facts that both Mr. Lee and LM testified to at trial, so we know that they were witnessing the incident at issue. The court also found that the Massenburg, like you said, affidavits established that she wasn't forced into the car, but, again, that's a final fact, and they do because they don't describe any sort of physical behavior. Also, the circuit court discredited the affidavits because they listed the date of the incident as April 16, 1995, instead of April 15, 1995. But, Your Honors, the affidavits state what they saw happen on or about April 16, 1995. So that's close enough in time to where, at this stage, they need to be accepted as true again. And I also want to point out that even the litigants in this case referred to the incident as happening on that date as well, so there was confusion with the dates in general. Your Honor, with respect to the unreasonable assistance problem, we know from People v. Skinner that an unclear record on whether counsel contacted witnesses prior to trial is enough to order an evidentiary hearing. Here, the case is stronger than that. These five affidavits all were executed in October and December 1995. At a pretrial hearing on January 31, 1996, so at least one month after all these affidavits were executed, Mr. Friedman, the trial attorney, stated at a pretrial hearing, quote, there are several witnesses who have contacted me about testifying on behalf of Mr. Lee, a couple of them just within the past week. I just have not had time to meet with all these people, hear what they had to say, and determine whether or not they were testifying, how they fit in, end quote. These witnesses are never mentioned again in the record. So I don't even know if he did contact them after that. Right, Your Honor. I think if he would have contacted them, there would be some mention somewhere in the record of speaking to witnesses that he previously mentioned he had not spoken to. But in addition to that, we have Mr. Ellison's second affidavit from 2008, which explicitly states that he sent a copy of his first affidavit to Mr. Friedman, along with a letter stating that he would not have a problem testifying on Mr. Lee's behalf, but Mr. Friedman never contacted him. So the Ellison's second affidavit explicitly states that he sent his materials to Mr. Friedman, but Mr. Friedman never contacted him. So accepting the well-founded facts as true and construing the allegations literally in Mr. Lee's favor as required, the affidavits, as indicated by the record, have been sent to Mr. Friedman. He simply did not call them. And that's why we need an evidentiary hearing here, Your Honors. We need to be able to call Mr. Friedman and his witnesses at an evidentiary hearing to see what happened and why they weren't called. And as of right now, Your Honor, unless you have further questions. Okay. Thank you. Counsel? Good morning again. People maintain that this petition was properly dismissed in this case. There is absolutely no circumstance under which the defendant, the petitioner in this case, made a substantial showing that he was deprived of effective assistance of counsel. What about this issue that he was aware of his witnesses, but? That counsel was aware? Right. There's nothing in the record to support that. As Your Honor pointed out, there's a reference, the only reference in the record, first of all, there was no affidavit from trial counsel, and none of these witnesses said that they contacted counsel, that they said they were available to testify, with the exception of this Philip Elston, who filed a second affidavit 12 years after the first one, and said that he had sent a copy of his affidavit to trial counsel and to the defendant in this case. He didn't say when he did that. He didn't say whether it was before trial, how far in advance of trial. There's nothing to show that trial counsel was aware, and it is the petitioner's burden to establish this in making his claim. It's his burden to make a substantial showing of an effective assistance of counsel, and he has failed to establish either prong of Strickland. Most important in this case, he in no way can establish that any of these witnesses who are now the subject of this appeal, that had they testified at trial, that they would have made a difference in the outcome. As Your Honors recognized, the victim in this case testified to her injuries. There were photographs, I believe, that were taken of her at the police department the day after she was attacked. They showed substantial injuries, blackened eyes, blackened ears, blood, injuries to her face. The trial court specifically noted that the court found the victim's testimony to be highly credible and found specifically the defendant's testimony to be incredible, and that is what the records in this case show. Any of these witnesses, none of them, excuse me, were witnesses to the events that took place. It, again, is the defendant's burden to make a substantial showing that any of them would have made a difference in the outcome. What about Mr. Elston, who claims that he observed these incidences, I mean, after the fact, but he still was able to corroborate Mr. Lee? Mr. Elston said that, first of all, that it was between 3.30 and 4 o'clock when he made observation of a, Mr. Elston said that the petitioner walked up to his car and that they drank beer and talked for a while. Most importantly, that alone, had he testified to that, would have contradicted what the petitioner himself testified to at trial. He never mentioned even seeing Elston, having a conversation with him. He said he sat on a cement parking stump drinking beer while his co-defendant was in the car with the victim. Again, what Elston said he observed was after the victim made her outcry at 3 o'clock in the morning when she ran, stuck naked, to a stranger's front door, pounding on the door, and made an immediate outcry, appearing injured, as was testified to that witness as well, to the outcry witness. Her face was bloodied and bruised, and she also substantiated those injuries. As to the other affidavits, the Massenburgs, they don't describe the occupants of the vehicle. All they say is a blue Cadillac. And in his brief, the petitioner makes a lot of assumptions and a lot of speculation. We don't know who the Massenburgs were talking about. They don't identify either the petitioner or his co-defendant. They don't give a description. They simply said that they saw a woman get inside of a car, a white woman get inside of a car and pull away. That's all they said. And as Justice Gordon pointed out, they don't say that she got in voluntarily. They don't say anything as to how she entered the car, other than that she got in the car and they drove away. They weren't witnesses to what transpired within that car when the victim was repeatedly sexually assaulted by both the petitioner and his co-defendant and was beaten substantially by this petitioner. With regard to the rest of the affidavits in this case, and as was pointed out in our brief, none of them witnessed the events that took place in this case. None of them said that they would testify. None of them substantiated when they, or if they even made counsel aware of what they said in these affidavits. And none of what any of them says does not create a reasonable probability that the outcome of this trial would have differed had they testified. For all of these reasons, we ask that you affirm the circuit court's dismissal of the defendant's petition. Thank you. Thank you. Barlow. Your Honor, counsel is correct. This case did come down to credibility. And we have five witnesses who have impeached critically the credibility of the only real witness of the crimes that the state presented at trial. So this case does come down to credibility. The charge has stated that, and that's why these affidavits are so important. They would have destroyed the credibility of LLM at trial, or at least negated it to a sufficient degree. And through it, Your Honor, in addressing some of the points that the state just made, she, the counsel argued that Mr. Ellison's second affidavit didn't explicitly state exactly when he sent his first affidavit to Mr. Freeman. However, we know from general experience that an affidavit is probably going to send it that same day. And in any case, he noted that he also sent a letter stating that he would have no problem testifying on Mr. Lee with the affidavit. So his letter was contemplating testifying on behalf of Mr. Lee. So it was sent before trial. So we don't have a problem there. In terms of not mentioning the parties by names, again, affidavits base their affidavits on firsthand knowledge. And there's no reason to think that the Massenbergs here had any familiarity with any of the parties. So they simply described what they saw. Don't you think it would be important in this case to have an affidavit from the appellate counsel or even post-trial counsel that the trial counsel was uncooperative in providing an affidavit? Your Honor, that may have helped, but I don't know if counsel would have been cooperative in providing or even talking to post-condition counsel. And I think that's why you need a hearing, because I don't think counsel is going to admit anything or testify truthfully to anything. Well, you don't think, but the question is, this is what really has to be done to be able to show why this wasn't done. I mean, you have to show it wasn't trial strategy. Maybe he talked to all these people, and there's a reason why he didn't put them on the stand. I agree, Your Honor, and that's exactly it. And when that happens, and the lawyer's not cooperative, you file an affidavit, he won't tell us why. So then we could look at everything together. We have that determination. Your Honor, I agree with you. I think the lawyer does need to explain why he didn't call these witnesses. And, well, he did try to contact any of them. But I think the proper way to do that and the way that the law provides is to have an evidentiary hearing. He needs to be able to show. I don't think the law provides that. You give that away like candy, you see. You have to be able to have a substantial showing. And to have a substantial showing, you have to have all your blocks in place. And if you don't have the lawyer's affidavit, you have an affidavit as to why you don't have the lawyer's affidavit. These are the steps that you take. These cases that you're quoting, it doesn't say you automatically get an evidentiary hearing. Every criminal in prison has a thousand reasons why he shouldn't be there. And they file post-conviction petitions left and right saying all kinds of things that may be true or may not be true. But you're asking for this court to reverse somebody. You have to have your blocks in order. Go ahead. I agree with you, Your Honor. Evidentiary hearings aren't given out like candy. You need to make a substantial showing. And then the claim needs to be explored in an evidentiary hearing. And here we have five affidavits from the witnesses. Mr. Lee can't exonerate himself right now because he hasn't been able to call these witnesses to have them testify in open court. He hasn't been able to call Mr. Friedman to testify in open court and to ask him any questions. And I think that's really the key here is that Mr. Lee just has merited an opportunity based on a substantial showing to be able to have Mr. Friedman in open court under oath, answer the questions, and to call these other witnesses who can testify as to what they saw and what they heard that day. So if you have no more additional questions. Thank you. Okay. Thank you, Your Honor. All right. I want to thank counsels for a well-argued matter. The court's going to take it under advisement. And this court is adjourned. Thank you.